UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:06-CR-25 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| MICHAEL NELSON ) | |
| ) | |

**M E M O R A N D U M**

Before the Court is Defendant Michael Nelson's ("Defendant") motion for release pending appeal (Court File No. 43)[1] as well as his memorandum of law in support (Court File No. 42). Defendant requests an order granting him bond pending appeal pursuant to 18 U.S.C. §3143(b). The United States of America ("Government") filed a response (Court File No. 45). Also before the Court is Defendant's notice of late-filed exhibit to motion for release and in the alternative motion to delay report date (Court File No. 46). For the following reasons, the Court will **DENY** both of Defendant's motions (Court File Nos. 43 & 46).

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On May 25, 2006, with the benefit of a plea agreement, Defendant pleaded guilty to Count Three of the Indictment which charged him with aiding and abetting mail fraud in violation of 18

---

[1] Court File No. 41 is a duplicate copy of Defendant's motion for release pending appeal, Court File No. 43. Accordingly, Court File No. 41 will be terminated by the Court.

U.S.C. §§ 1341 and 1342 before Magistrate Judge Susan Lee (Court File No. 19).[2] The Magistrate Judge issued her report and recommendation on June 1, 2006, which recommended that Defendant's plea of guilty to Count Three of the Indictment be accepted by this Court (Court File No. 24). On June 29, 2006, the Court entered an order accepting and adopting the Magistrate Judge's report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and ordered that Defendant's plea of guilty to Count Three of the Indictment was accepted, adjudged Defendant guilty of the charges set forth in Count Three of the Indictment, deferred a decision on whether to accept the plea agreement until sentencing, and ordered that Defendant shall remain on bond until sentencing (Court File No. 26). Defendant's sentencing hearing was held on February 8, 2007 and February 9, 2007 before this Court (Court File Nos. 31 & 33).[3] Defendant was sentenced to 27 months imprisonment, 3 years supervised release and ordered to pay $477,204.00 in restitution (Court File No. 36). Defendant is not an American citizen and is subject to deportation upon release from imprisonment (*Id.*).

Defendant filed a notice of appeal on February 16, 2007 (Court File No. 34) and Judgment was entered against Defendant on February 23, 2007 (Court File No. 36). Defendant filed a motion to stay sentencing pending appeal on March 2, 2007 (Court File No. 39). The Court denied this motion and ordered Defendant to comply with the Judgment and self-report to the Bureau of Prisons for service of his sentence on April 9, 2007 before twelve noon (Court File No. 40). Defendant then filed the instant motion on March 14, 2007 requesting release pending appeal (Court File 43) as well

---

[2] Specifically, Defendant along with his codefendant, Kelli Finnell, devised a scheme and artifice to defraud concerning a loan application for the purpose of starting a day care business known as Kids R Kids Academy of Learning, Hixson (Court File No. 1).

[3] The transcript of Defendant's sentencing hearing is located in the clerk's office (Court File No. 44).

as a notice of late-filed exhibit to the motion for release and in the alternative a motion to delay his reporting date (Court File No. 46).

**II.     STANDARD**

The Bail Reform Act governs the Court's determination of whether a defendant should be allowed to remain on bond while an appeal is pending, and it creates a presumption against release. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). The statute provides that a defendant found guilty of an offense and sentenced to a term of imprisonment must be detained unless a judicial officer finds: (1) by clear and convincing evidence the defendant is not likely to flee or pose a danger to the safety of another person or the community; and (2) the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a sentence reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(A)-(B); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002); *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985). "[A]n appeal raises a substantial question when the appeal presents a close question or one that could go either way and the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal quotations omitted).

## III. DISCUSSION

### A. Motion for Release Pending Appeal

Applying the elements of 18 U.S.C. § 3143(b)(1)(A)-(B) the Court must first determine whether Defendant is not likely to flee or pose a danger to the safety of another person or the community if allowed to remain on bond pending his appeal. Defendant submitted three affidavits along with his brief in support of his motion: (1) the affidavit of James Waddell, his immediate supervisor at his current job, (2) the affidavit of Jennifer Nelson, his wife, and (3) his own affidavit (Court File No. 42, Attachments 1, 2, & 3). Defendant is a citizen of the United Kingdom; however, he surrendered his passport prior to his arrest in this matter (Court File No. 42, Attachment 3). Defendant indicates it is his intention to remain in Chattanooga, Tennessee indefinitely upon the final resolution of this case (*Id.*). There is evidence that Defendant has resided in Chattanooga, Tennessee since 1994 and has owned a home in that location for approximately five years (*Id.*). Defendant is currently employed and has been offered continued employment upon his release from imprisonment if a vacancy exists (Court File No. 42, Attachment 1). Additionally, Defendant's wife of over 37 years has indicated it is her intention to continue to reside in Chattanooga, Tennessee with her husband for the remainder of their lives (Court File No. 42, Attachment 2). In her affidavit, Jennifer Nelson also indicates she does not believe Defendant poses a flight risk. (*Id.*). Accordingly, the Court finds by clear and convincing evidence that Defendant is not likely to flee if allowed to remain on bond pending his appeal.

There is no evidence that Defendant has a criminal history (Court File 42, Attachments 2 & 3). Additionally, the factual basis of Defendant's plea agreement indicates the crime he pleaded guilty to did not involve violence (Court File No. 21). Therefore, the Court finds by clear and

convincing evidence Defendant is not likely to pose a danger to the safety of the community if allowed to remain on bond pending his appeal.

Therefore, Defendant must prove his appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence. 18 U.S.C. § 3143(b)(1)(B). In the brief accompanying his motion, Defendant argues his appeal raises two such questions: (1) whether this Court erred in finding Defendant responsible for the loss caused by his co-defendant, Kelli Finnell's ("Defendant Finnell") diversion of two checks that belonged to Nedgraphics (Defendants' previous employer); and (2) whether this Court erred in accepting the valuation of Kids R Kids (the day care center which was the subject of a fraudulent loan Defendants obtained) as stated in the Presentence Report (Court File No. 42). Extensive evidence was presented at the sentencing hearing concerning both of these issues and the Court made findings of fact concerning them (Court File No. 44, Transcript, at 54-59).[4]

A district court's factual findings at sentencing concerning the amount of loss for which a defendant is to be held accountable are subject to a deferential "clearly erroneous" standard of review. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997); *United States v. Brawner*, 173 F.3d 966, 971 (6th Cir. 1999). A finding of fact is clearly erroneous when a reviewing court is "left with the definite and firm conviction that a mistake has been committed" based upon a review of the

---

[4] Defendant argues that his objections to the Presentence Report were unresolved (Court File No. 42); however, that is untrue as the sentencing hearing transcript clearly reflects that the Court overruled both of his objections concerning the two checks taken from Nedgraphics and the valuation of the Kids R Kids property. (Court File No. 44, Transcript, at 58). Additionally, the transcript reflects that the Government conceded Defendant's objection related to the credit cards and the Court sustained it (Court File No. 44, Transcript, at 4, 54).

5

entire evidence. *United States v. Gort-DiDonata*, 109 F.3d 318, 320 (6th Cir. 1997). The Court will consider each of these issues in turn.

      i.     *Loss caused by diversion of two checks from NedGraphics*

Defendant claims this Court erred in finding him responsible for the loss caused by the diversion of two checks taken from Nedgraphics by Defendant Finnell. At the sentencing hearing there was testimony that Defendant and Defendant Finnell formed a criminal "scheme to build and manage and operate a daycare center," which began when both went into the bank together and received $100,000.00 by using false means on April 21, 2004 (Court File No. 44, Transcript, at 9-10, 23). After they obtained this loan, there were two checks, one in the amount of $55,000.00 and the other in the amount of $7,704 taken from their employer (Nedgraphics), on September 15, 2004 and June 14, 2004 and placed into accounts owned by both Defendant and Defendant Finnell. (*Id.* & Court File No. 42) Although the Court noted that this is a closer issue that comes down to foreseeability, it found based upon the totality of the facts and circumstances the Presentence Report accurately attributed the loss resulting from the two checks to Defendant (Court File No. 44, Transcript, at 57).

The United States Sentencing Commission Guidelines Manual § 1B1.3(a)(1)(B) provides a defendant is accountable for "all reasonably foreseeable acts . . . of others in furtherance of [a] jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). After carefully considering all the evidence, the Court found that this fraud was reasonably foreseeable to Defendant (Court File No. 44, Transcript, at 54-57). Specifically, since it is not clear exactly when Defendant was made aware of Defendant Finnell's criminal history, the Court looked to Defendant's background and the relationship he had with Defendant Finnell to establish foreseeability. (*Id.*) Defendant had worked

6

for Nedgraphics, a foreign-based company, for ten years, managing their office in Chattanooga. (*Id.*) The length of his employment suggests that he was a valuable and trusted employee. (*Id.*) This would suggest Defendant made some effort to learn about Defendant Finnell's background when he hired her. (*Id.*) Defendant Finnell represented she was a CPA, which she was not. (*Id.*) Someone with Defendant's experience, who hires someone with a professional credential would learn quickly whether the person in fact had the professional background that was represented. (*Id.*)

Additionally, Defendant agreed to enter into a partnership with Defendant Finnell to start a day care business. (*Id.*) This suggests that the two had more than a normal supervisor-subordinate type of relationship. (*Id.*) They would have discussed their financial affairs and business goals. (*Id.*) In fact, the two had an understanding that each would make financial contributions to the day care business. (*Id.*) At some point, it must have become clear to Defendant that Defendant Finnell did not have the financial wherewithal to contribute capital to their business. (*Id.*) He was her employer, so he knew how much money she was making legitimately. (*Id.*) Defendant would also have known Defendant Finnell had access to the company's assets and checks, and he had supervisory authority over her. (*Id.*) Moreover, Defendant and Defendant Finnell had already obtained one fraudulent $100,000.00 loan together in furtherance of their jointly undertaken criminal activity before Defendant Finnell diverted the funds from the two checks.[5] Based upon this evidence, the Court found Defendant was aware Defendant Finnell did not have the ability to

---

[5] This loan was taken out by Defendant and Defendant Finnell in the name of Nedgraphics, without its knowledge or permission. (Court File No. 44, Transcript, at 48-49). Defendant fraudulently represented he was the president and owner of Nedgraphics and Defendant Finnell misrepresented she was the CFO of the company. (*Id.*) They both knew the proceeds of the loan were not going to Nedgraphics, but to them personally in furtherance of their fraudulent scheme. (*Id.*)

7

legitimately supply money to the enterprise herself (*Id.*). Therefore, it was reasonably foreseeable to Defendant that Defendant Finnell would engage in improper activities in order to make financial contributions to their enterprise. (*Id.*)

Defendant adamantly argues this loss should not be attributed to him since he disclosed it to Nedgraphics, and the company did not charge him with this loss. These arguments are without merit since Defendant was aware Defendant Finnell was willing to engage in criminal fraud in order to advance their joint venture; therefore, it was foreseeable that she would use fraudulent means to obtain capital for their enterprise.[6]

Regardless of Defendant's arguments, the Government is correct this determination is not integral to the Defendant's sentence because neither the inclusion nor exclusion of this loss changes the Defendant's guideline range.[7] The total loss from the Kids R Kids fraud alone exceeds the $400,000.00 threshold of Federal Sentencing Guideline § 2B1.1(b)(1)(H). Therefore, the loss caused by diversion of the two checks from NedGraphics which was attributed to Defendant does not raise a substantial question sufficient to overcome the presumption against release.

    ii.    *Valuation of Kids R Kids*

Defendant contends that the value of the property in question is $2,638,000.00 as set out in the appraisal which he submitted; therefore, he does not owe any restitution in connection with the fraudulent loan concerning the day care center, Kids R Kids, since the property is worth more than

---

[6] Additionally, there was testimony at the sentencing hearing that Defendant had knowledge that Defendant Finnell diverted the two checks and deposited them into their joint account prior to the time he notified his employer of this diversion (Court File No. 44, Transcript, at 24, 31, 43-44).

[7] The loss attributable to the two checks added $62,704.00 to the Defendant's total restitution amount (Court File Nos. 36 & 42).

8

the amount of the fraudulent loan, $2,304,500.00 (Court File No. 42).  Additionally, he argues if the court of appeals finds in his favor on this issue his total offense level would change from Level 18 to Level 7, which carries a sentence of 0-6 months.

The Government argues the Court's determination of loss regarding Kids R Kids daycare was reasonable based upon the evidence presented.  At the sentencing hearing, evidence concerning this issue included: (1) Defendant's estimated value of the property contained in the appraisal he submitted, (2) the lender's estimated value of the property contained in the Presentence Report, and (3) the Government's evidence concerning the value of the property in the form of testimony concerning two offers to purchase it from prospective buyers.

As the Court noted at the sentencing hearing, the starting point is Section 2B1.1 of the United States Sentencing Commission Guidelines Manual (Court File No. 44, Transcript, at 57).  "The Court is required to make a determination of loss, but the guidelines say that the Court need not made this determination with mathematical precision" (*Id.*).  Commentary 3(C) to USSG § 2B1.1 states: "Estimation of Loss–The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence.  For this reason, the court's loss determination is entitled to appropriate deference." USSG §2B1.1, Commentary 3(C).  "In situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information. Such estimates need not be determined with precision." *United States v. Triana*, 468 F.3d 308, 320 (6th Cir 2006) (internal citations and quotation marks omitted).

The available evidence included several different valuations of the Kids R Kids property. First, Defendant introduced an appraisal into evidence prepared by Henderson, Hutcherson &

9

McCullough, PLLC which valued the property at $2,638,000.00 (Court File No. 42). The Presentence Report contained a value of the property obtained from the lender, CIT Lending, which was $1,850,000.00 (Court File No. 45). The Government presented evidence concerning two offers to purchase the property from potential buyers. (Court File No. 44, Transcript, at 11-14). One offer was for $800,000.00 (Court File No. 44, Transcript, at 12), and the other was for $1,500,000.00 (Court File No. 44, Transcript, at 13). The Court found there is some validity to all of these figures (Court File No. 44, Transcript, at 58). Defendant's valuation comes from a professional appraiser; the value contained in the Presentence Report comes from the lender, who has the greatest interest in the property; and the Government's figures came from serious potential buyers who have experience in this type of property (*Id.*). The Court carefully considered all of the available evidence and determined the valuation contained in the Presentence Report, $1,850,000.00, is almost exactly in the middle of the Government's evidence and the Defendant's evidence; therefore, it is a reasonable estimate of the loss. Because the Court considered all the available evidence concerning this loss, its determination does not raise a substantial question likely to result in reversal or a reduced sentence.

### B. Motion to Delay Defendant's Report Date

Defendant filed a notice of late-filed exhibit to his motion for release and, in the alternative, a motion to delay his report date (Court File No. 46). Attached to his motion is a letter from his current employer requesting an extension of his report date (Court File No. 46, Attachment 1). Defendant was sentenced on February 9, 2007 (Court File No. 33) and ordered to self surrender for service of his sentence on April 9, 2007 (Court File No. 36). This allowed sufficient time to arrange and conclude his affairs. Therefore, the Court will **DENY** his motion to delay his report date and

will order he self-report to the Bureau of Prisons on April 9, 2007 before twelve noon.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will **DENY** Defendant's motion for release pending appeal (Court File No. 43) and Defendant's motion to delay his report date (Court File No 46) and Defendant will be **ORDERED** to self-report to the Bureau of Prisons on April 9, 2007 before twelve noon.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**